Mr. Wells. Good morning, Your Honors. May it please the Court, I'm representing Lt. Roger A. House. I know in previous cases, Dysart and Lewis specifically, this Court has found some tension between 10 U.S.C. 624-D and D-4, I'm sorry, and the Dysart and Lewis, the actions of the Court were correct, but are distinguishable in the instant case. Specifically, Dysart, as you remember, had a case where the President reached out and actually pulled Admiral Dysart's name off the list, and Lewis, she became ineligible for the promotion as a matter of law. That's not the case here. And as we explore, you know, 10 U.S.C. 624-D-4s and the appointments clause, it's certainly not inconsistent. Even in the normal appointment, the President does not actually make the appointment or the nomination. He's delegated that down to the Secretary of Defense. Other cases, for example, a battlefield promotion or a temporary promotion in time of war or national emergency under 10 U.S.C. 603, he's delegated that down to the Secretary of Defense by Executive Order. In contrast to the normal appointment, say, of a postmaster or an assistant secretary, retirement is presumed voluntary unless there was some misrepresentation or deception. Did that occur in this case? Your Honor, I believe the standard can include a negligence misrepresentation. In this particular case, he received... Excuse me, I'm recovering from a cold. I received, you know, guidance from his peers and his subordinates that basically said, Lieutenant House, given your situation right now... Well, there's Mills' deception in this case. Although it's not direct deception of the retiree, it's deception. Does that operate to affect the voluntariness here? Your Honor, I think it does. And I think you've raised a very good point. Well, but it's not directed... the deception was not directed at the deception with regard to the retirement decision. It was deception, as we know, in a criminal manner. Yes, sir, but it started the chain of the events. Absent Mills' deception, Lieutenant House would never have been convicted. It wasn't an opinion saying, your career is finished. That's opinion. That's conjecture. That's not misinformation like saying you had to do something by December 15th, when you had to have done it by December. This is just opinion, wasn't it? Well, it's an opinion, and it's not misinformation. In fact, it's very good information because his career was done at that particular point in time. In part, as Chief Judge Rader said, because of that original deception of Mills. And again, you have to look at it, I believe, in the context of what he was facing. General court might have conviction. He's already been to a Board of Inquiry. You know, it's the only reason he passed that Board of Inquiry was because he was so close to retirement. You know, he had believed his name had already been removed from the promotion list. Probably more importantly, he had been not recommended for promotion by his latest fitness report. Why did he believe his name had been removed from the promotion list? His interpretation, frankly, Your Honor, my interpretation of the letters which came out from the Chief Enabled Personnel indicating that... Don't they clearly say you're still on the list and you're still under consideration? It does, but he did submit the information as request once. He was told not to do it a second time, and then he gets the fitness report, which actually, excuse me, I'm sorry, actually pulls back that promotion recommendation. Even though he's technically selected, he's now no longer recommended for promotion. And if you're in that situation, it's a no-brainer. You're done. We're going to delay. He didn't say we pull it back. He didn't pull back the decision to promote. They simply delayed it pending outcome of the investigation. I agree with you on the face of that letter, but then when you add in that fitness report, and in the back of the fitness report, you see several stages of promotability up to, you know, must promote, early promote, so on and so forth, all the way down to significant problems, which is negative promotion recommendation. He got that report. He knew at that particular time he was finished. There was no way that he could be promoted. And in fact, yeah, he received counseling to that effect. But your honors, you know, even if you were to find... Let's go back to that. That's a very important point, you know, in this whole timeline. He's trying to decide, do I stay or do I leave? And the Navy's telling him, stay. We're delaying. You're still in there. You're still in the running. The investigation isn't over. And he gets advice from a lawyer or a friend that tells him, get out. And he gets out. Why should we hold that advice from a friend or his lawyer against the Navy? That information didn't come from the Navy. Again, I would ask you to look at the totality of the circumstances and the fact that he received that fitness report that said, that basically took away promotion recommendation by checking this significant problems box is huge in hoping to make that decision. At that point, without a commanding officer's recommendation for promotion, I don't think he could be promoted. But the other problem, your honors, is even if that promotion was not voluntary, he had the time and grade to have been promoted because he only needed six months for his just because you're presented with unsavory options, that doesn't negate the voluntariness of your decision to retire in the face of those unsavory options. Again, your honor, I would point to Covington, which says if you receive information that's not necessarily malicious, it can be negligent, it can be well-meaning, that can, in this particular case, carve an exception. And your honor, I would also state or submit respectfully to you that if there is a case where the exception should be carved, it's certainly this case. I mean, the man's wife is getting ready to leave him. She's saying, hey, DNA doesn't lie. He's trying to save a marriage. He's in Memphis. She's in Atlanta. Everybody's telling him and he knows that his career is over. Because, Judge, I mean, quite frankly, if he had stayed in, his career was over. He would have just been passed over, it would have been futile. And just as... But getting back to the first point, he was never nominated, never confirmed, never appointed. But then he should have been. Under the DOD rights, he should have, that information should have gone up to the DOD, to the Secretary of Defense, who was actually making that. But your honors, again, under 10 U.S.C. 624-D, he didn't have to be. Because at that point in time, you know, absent a request for additional extensions of time on behalf of the Navy, it happened by operation of law. And your honor, and again... How do we know he would have been selected, even if he'd gone up there, to be considered? If he'd gone up a second time? Or if he'd gone up the first time? We don't... You know, I mean, certainly we would have provided some input. And given the situation at that particular time, whether the Senate would have confirmed him or not, I don't know. I mean, to be frank, it would probably be highly unlikely. But had it, again, not been for Mr. Mills' falsification of evidence, we'd have never been in this situation. Judge, Lieutenant House, one of our best and brightest, he was broomed to be the Executive Assistant Secretary to the Surgeon General of the Navy. This was an outstanding individual with no flaws on his record. Without Mr. Mills' action, we wouldn't be here today. And Captain, or more likely Rear Admiral House, would be doing about the nation's business right now. It's clear from the record that the whole thing is a tragic situation. Yes, sir. And you bring out some of the reasons why it is tragic. And it is. Our case law is pretty clear on this. And we have precedent. It's clear that there's no... Promotions cannot operate under operational law or occur under operational law under Section 624 in situations that are exactly like your clients. So that's what we're faced with. Well, Judge, I understand that. But Dysart and Lewis, which are the two presidents you're referring to, are situations not like Lieutenant House. If the President had come down and pulled Lieutenant House's name off and said, I'm not going to nominate him, then I agree. You know, Dysart and Lewis would control. But that was a situation where Lewis became ineligible as a matter of statute and became a situation with Dysart that the President actually did that and removed the name. That didn't happen here. Now, maybe if they followed the rules, it should have. But in this situation, there has been no confirmation, for example. But 624 D-4 doesn't require that. And there's other cases. Again, if you're doing a battlefield commission, nobody stops the battle to get on a sat phone to the Senate. Boom, it's done. And 10 U.S.C. 603 allows that to happen, a temporary permission. And like I said, none of this is done by the President. It's all delegated down to the Secretary of Defense anyhow. In case 10 U.S.C. 603, it's delegated down by an executive order. And in cases, the general promotions, the Secretary of Defense do it. Your Honors, I'm into my rebuttal time. You may save it. Thank you. We'll hear from Ms. Grigsby. May it please the Court. This case is about the choices that Mr. House had at the time of his retirement, not about Mr. Mill's bad act, not about the court martial conviction that no longer exists. The question before the Court now is whether the trial court erred when it decided that Mr. House could not, he could not make a promotion to Lieutenant Commander. And he was correct for two reasons. The first of which is because Mr. House was never nominated, confirmed, nor appointed. And the second reason is because Mr. House voluntarily retired from the Navy prior to when his promotion was acted upon. What about D-4? Your Honor, our construction of 624 is that D-4 refers to the promotion list, which is defined in Section A as the report of the selection board convened under Section 611 of this title is approved by the President. And then it says the Secretary of the Military Department can place the names of all officers approved for promotion within a competitive category on a single list for that competitive category to be known as the promotion list. So looking at the whole statute, it appears that when they talk about the appointments next, that's referring to the promotion list, which is the list that's already been confirmed. But even assuming that 624-D does apply, Mr. House's promotion, he was selected in April 2002. And he ended up retiring by October 1, 2003. Was Lieutenant House's name ever removed from the board's list? It was withheld from the board's list. Was it removed, stricken from the board's list? No, Your Honor, it wasn't stricken. What the Secretary of the Navy just described... Why hasn't the Navy produced the board's list? It was not in the Ministry of Record. However, if this court is troubled by that, then the correct course of action then would have been for the trial court to remand it back to the board to complete the record. But it's pretty... Even if his name had been removed from the board list, does that change the situation here? No, because it really runs into the appointments clause, which is the problem in Dysart and Lewis, which is that the trial court has no authority to appoint an officer who's never been nominated, confirmed, nor appointed. So yes, it could have been error, but there's still this constitutional issue. Dysart goes to whether promotion can occur by operation of law. I'm referring more right now to whether the Lieutenant's resignation was voluntary or not. Well, okay, so the question of voluntariness is an interesting one. Because here, if you look at the timeline of events, Mr. House was not subject to any administrative actions at the time of his retirement. In other words, he was not being forced out by the Navy at that point. If there's deception by a government official, that negates the voluntariness. Why isn't Mills's deception sufficient to satisfy that? Well, looking at a test like Carmichael, we can see that there could be a coercive act on the part of the government. But even in Carmichael, the last time the court revisited this voluntariness in a precedential opinion in the military context, it adopted the Christie test, which is that you have to involuntarily accept the terms of the government. There were no alternatives, and there were coercive acts on the part of the government. There's still alternatives, and here the alternative would have been for Lieutenant House to stay in the Navy and to wait for his promotion to be acted upon. Sometimes the record says more by what it doesn't say, and here he was convicted of a serious offense in a court-martial, and the penalty is negligible. Bespeaking the high regard that the entire service community had for him and his service, saying that this was an exemplary officer, and all of that was interrupted by something that was deception by a government official. Why don't we recognize that as negating, as setting in course the chain of events that interrupted this remarkable career? It did interrupt it, but the point is it didn't leave Mr. House without any in the civilian area. We're talking about the military, and you're in the military, and you're up for promotion, and then you're convicted of this very serious crime that the lieutenant was convicted under. Does a lieutenant really have any options? His option was to stay on and to press for his promotion, and let's not forget that... Is that really an alternative? I mean, he's been court-martialed, found guilty. Is it really an alternative for a naval officer to stay in the Navy hoping that it's going to turn out okay? I mean, in this case it did, but it did so on the basis that the chief is pointing out, deception by a government official. Well, it's hard because the question is very simple. He wasn't facing any imminent action forcing him out, so we don't know what would have happened to Lieutenant House. It would be completely different if he had not been retained by the Board of Inquiry. Then, I mean, we could say for sure that his leaving or his retirement was caused by this court-martial conviction, but here, I mean, there are several facts that show that Lieutenant House was, in fact, recovering from this. Namely, if you look at pages 1002 to 1003 of the record, Lieutenant Commander House writes the Chief of Naval Personnel and requests his promotion. He received nine letters of recommendation, seven letters of recommendation from his supervisors, who all still continue to support his promotion. On page 1000 of the record, 1000 through 1001, we've included the full fitness report. In Block 8, under promotion status, he's actually still listed as selected. He is not listed as non-promoted. He's listed as selected, even in February 2003. So, it's... To what extent is that pro forma? I mean, if someone is, you're slated for promotion, and I saw the little checkboxes and everything, and they're told, essentially, you're up for promotion, but hang in there. We're still going to check into, we've got other checking to do. In other words, you're not promoted as high as a lieutenant would have been, absent the actual appointment by the president, after confirmation and nomination. And isn't this just a process that they're put through on a pro forma basis? Is there really anything different that happened here for the lieutenant? Different meaning that it was not likely he would have been, more or less likely he would have been promoted? Was he told to, was he told to, that his delay was occurring? Was that, was that because all individuals in his case, most individuals would be told there's a delay, because under 10 U.S.C. 618, the Secretary of the Navy has a responsibility to include any adverse information for the Secretary of Defense to consider, at the time where the Secretary of Defense actually nominates the person up for the officer position. So, here, the Secretary of the Navy informed Mr. House that he was considering all the adverse information, and at that time, there were still other proceedings going on. Namely, at first, when he wrote in August 2002, the convening authority had not yet acted upon Mr. House's conviction and sentence. And then later, Mr. House was issued a show cause notice to show cause for his retention before a board of inquiry. So, all of that information would be relevant to the information that the Secretary of the Navy needed to include to send on to the Secretary of Defense. I want to ask you about Mr. Mills. Did Mr. Mills deceive Lieutenant House? Or, was this negligence, or was this, whatever it was, it wasn't in relation to Lieutenant House. Mills didn't interact with House, is that correct? So, when the government gives misinformation to an employee or an individual, there's a direct interaction there. Here, Mills did not inform, or did he? How did Mills interact with House? Well, Mr. Mills testified at the court-martial proceeding, so that's in January of 2002. And we know now that the DNA evidence was retested, so that it's the opposite of what he testified to. But, so that's Mr. Mills' role, and Mr. Mills' role pretty much ends- But there's something else, and that was that Mr. Mills had been fraudulently reporting on some of his tests.  So he was performing fraudulent tests, and then it turns out later on, another DNA test exonerated the Lieutenant. Yes, yes. Well, Mr. Mills, I mean, his association with the U.S. Army Crime Lab has been terminated. Was the Lieutenant informed of the exoneration prior to his decision to resign? He wasn't, but the evidence hadn't been retested- Shouldn't that have happened? But the evidence wasn't retested until 2006, and the government didn't have notice of this bad actor until maybe 2004, 2005, at the earliest. I mean, it's not just Mr. House. A number of people were affected by Mr. Mills' work, which is- So what happens if we find that his resignation was involuntary? So he still hasn't been appointed. So what happens? He goes back, he gets his job back as a Lieutenant? That would be, under Smith v. Secretary of the Army, that would be the relief. But the problem here is also that Mr. House never requested that relief. Mr. House requested a promotion. We raised this issue before the trial court, that the appropriate remedy is reinstatement at the grade which was previously served. And Mr. House has never affirmatively sought that relief to be put back in the process. So you're saying based on what he's asked for, we can't give him? Right, Your Honor. I mean, there are limits to the law. Even if there was deception, misinformation? Well, at this point, we've done what we can do, which is to send it back to the Navy to get his conviction set aside, to get the forfeiture restored to him. In other words, he bet the House on appointment by operation of law? Yes, Your Honor. For these questions, we respectfully request that you affirm the trial court's decision and judgment in favor of the government. Thank you, Ms. Grigsby. Mr. Welch, you have over four minutes. Thank you, Your Honors. To kind of come back to the last point first, restoring him to active duty as a lieutenant at this point just would not be practical, number one. Number two, it would not be practical. Would not be practical. It's number two. So your case is based on appointment by operation of law? Appointment by operation of law. Or the other relief we did ask for is to go back and provide the information to the President or to the Secretary of Defense, have them submit it to the Senate with all the information, and ask the Senate to confirm with a retroactive date to 1 February 2003 and then go to his retirement. He wants that only so that he can get the back pay he would have been entitled to had he been promoted to begin with. He's not looking to get back into the Navy, is he? At this point in time, I don't think anybody is. He's been gone too long, Judge. That's the problem. Okay, so he's not going to get back in. No. He's only looking for the difference in the pay he would have made had he been promoted to commander. And the rank, sir. And the rank. Yes, sir, because, I mean, being a lieutenant commander retired sounds better than being a lieutenant. That affects his retirement? It affects his retirement pay, and it also affects, you know, with that comes certain prestige and so on and so forth. And it's a fact. I mean, I'm a retired commander, so, you know, I know that's better than being a retired lieutenant commander. The other thing I would ask you to consider, and I think perhaps you touched on, is the futility of having him stayed in. And at what point should he be required to continue to pursue something that's futile? Now, the government mentioned that his fitness report said selected on it. If you look at JA32, the undated letter that came out from the Chief of Naval Personnel, indicated that that's what it would be. So I believe Judge Rainier was right, it is a pro forma. But secondly, and that undated letter came out sometime in 2002. How long do you have to wait, especially after you have a fitness report with no promotion recommendation? It becomes almost, it's not only futile, but it's counterproductive. It's counterproductive because he's sitting around counting paperclips, and the government and the taxpayers are paying him to do it. Plus, at the same time, he's trying to save his wife. A general court martial conviction, a letter of remand, is a kiss of death. People lose their career today over DUIs. The other thing is, it was not just, and Chief Judge Rainier, thank you for bringing this up, it was not just the deception of Mr. Mills. But you know, for three years, we did not know that his DNA had been retested. For three years, we could have acted sooner, we could have possibly gotten a new trial sooner. He's had other issues coming up, which are not a matter before this court, but might have been cured by an earlier notification. For three years, that was kept secret from us, and the only reason we got it is because I sent a demand letter to the U.S. Army Crime Lab. Otherwise, to this day, we wouldn't know it. Assuming we can't restore his pay grade back to the commander rank, then what can we do? I mean, he's already getting a pay grade at the lieutenant rank. Right. Judge, there would be about eight months back pay, the difference between an O3 and an O4 lieutenant commander, there would also be a significant difference in his retirement pay from the time he retired in O3 on. We're not going to ask you to try to pay him an active duty pay from O3 to the present or anything of that nature. Lieutenant House earned that promotion. I honestly believe he would have been promoted to commander captain admiral. And I've been with him this entire court martial time. Sorry, I'm running short on time. But I also believe that he would have been promoted. He earned that promotion. There's nothing speculative about it. He was selected for promotional lieutenant commander and should have been promoted to lieutenant commander. He's not asking for a lot, and given what he's been through, I don't think he's asking for anything unreasonable. Given the application of 10 U.S.C. 624-D4, and also Congress's right to raise an army, navy, and the president's acquiescence by signing the document, which includes 10 U.S.C. 624-D4, I don't think it's unreasonable to ask, and I'm way over time. Judges, I apologize for that. Thank you, Mr. Wells.